UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

BARBARA S.[1],                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )        No. 2:21-cv-00224-DLP-JRS
                                        )
KILOLO KIJAKAZI,                        )
                                        )
                    Defendant.          )

## ORDER

Plaintiff Barbara S. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Social Security Disability Insurance Benefits ("DIB") under Title II

and Supplemental Security Income ("SSI") under Title XVI of the Social Security

Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, the Court

hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and

**REMANDS** this case for further proceedings.

## I.   PROCEDURAL HISTORY

On September 4, 2018, Barbara filed applications for Title II DIB and Title

XVI SSI. (Dkt. 14-2 at 24, R. 23). Barbara's applications alleged disability resulting

from hernia; acid reflux; gastroesophageal reflux disease (GERD); depression;

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

anxiety disorder; problems with her left hand, wrist, and arm; COPD; asthma; and osteoporosis in the hands and feet. (Dkt. 14-3 at 3, R. 83). The Social Security Administration ("SSA") denied Barbara's claims initially on January 3, 2019, (14-3 at 2-23, R. 82-103), and on reconsideration on March 5, 2019. (Id. at 24-47, R. 104-27).

Barbara filed a written request for a hearing, and on October 27, 2020, a hearing was held before Administrative Law Judge ("ALJ") Livia Morales, where Barbara, her counsel, and vocational expert, George Parsons, all appeared telephonically. (Dkt. 14-2 at 40-69, R. 39-68; Dkt. 14-4 at 41, R. 40). On November 12, 2020, ALJ Morales issued an unfavorable decision finding that Barbara was not disabled. (Dkt. 14-2 at 24-32, R. 23-31). On March 24, 2021, the Appeals Council denied Barbara's request for review, making the ALJ's decision final. (Dkt. 14-2 at 6-8, R. 5-7). Barbara now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB and SSI only after she establishes that she is disabled. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the

work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520(a)[2]. The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves h[er] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 404.1520 (A negative answer at any point, other than step three, terminates the inquiry and leads to a determination that the claimant is not disabled.).

---

[2] The Code of Federal Regulations contains separate, parallel sections pertaining to disability benefits under the different titles of the Social Security Act. The parallel sections – applying to disability insurance benefits and supplemental security income benefits – are verbatim and make no substantive legal distinction based on the benefit type.

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(iv).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id.* The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

The Court reviews the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Evidence is substantial when it is sufficient for a reasonable person to conclude that the evidence supports the decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

not whether Barbara is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   BACKGROUND

### A. Factual Background

Barbara was fifty-three years old as of her alleged onset date of July 30, 2018. (Dkt. 14-3 at 2, R. 82). Barbara is a high school graduate. (Dkt. 14-6 at 12, R.

331). She has past relevant work as a cashier and sandwich maker. (Id. at 13, R. 332; Dkt. 14-2 at 32, R. 31).

**B. ALJ Decision**

In determining whether Barbara qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Barbara was not disabled. (Dkt. 14-2 at 24-32, R. 23-31). At Step One, the ALJ found that Barbara had not engaged in substantial gainful activity since her alleged onset date of July 30, 2018. (Id. at 26, R. 25).

At Step Two, the ALJ found severe impairments of left upper extremity carpal tunnel syndrome and tendinitis with osteoarthritis of the left thumb joint status/post left 1st dorsal compartment release and status/post left wrist synovectomy; neuropathic pain left hand and thumb; and rheumatoid arthritis. (Id. at 27, R. 26). The ALJ also determined that Barbara had non-severe impairments of anxiety, hyperlipidemia, underweight, bilateral lower extremity edema, left ankle cellulitis, polyarthritis, fibromyalgia, erythromelalgia, tobacco abuse, and chronic obstructive pulmonary disease (COPD). (Id. at 27, R. 26). As for the "paragraph B" criteria, the ALJ concluded that Barbara had mild limitations in each broad functional area, including: understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 27-28, R. 26-27).

At Step Three, the ALJ found that Barbara's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. (Dkt. 14-2 at 28-29, R. 27-28). In evaluating Barbara's impairments, the ALJ considered Listings 1.02 (dysfunction of a joint due to any cause), 11.14 (peripheral neuropathy), and 14.09 (inflammatory arthritis). (Id.).

After Step Three but before Step Four, the ALJ found that Barbara had the residual functional capacity ("RFC") to perform light work, with the following limitations: frequently operate hand controls, handle and finger with the left upper extremity; frequently climb ramps and stairs; never climb ladders, ropes, or scaffolding; frequently balance, stoop, kneel, and crouch; occasionally work at unprotected heights; frequently work around moving mechanical parts; frequently operate a motor vehicle; frequent exposure to dust, odors, fumes, and pulmonary irritants. (Dkt. 14-2 at 29-32, R. 28-31).

At Step Four, the ALJ concluded that Barbara is capable of performing her past relevant work as a sandwich maker. (Dkt. 14-2 at 32, R. 31). The ALJ thus concluded that Barbara was not disabled. (Id.).

## IV. ANALYSIS

In support of her request for reversal, Barbara challenges the ALJ's decision on two grounds. First, Barbara contends the ALJ failed to encompass all of

Plaintiff's physical and mental limitations in the RFC. (Dkt. 16 at 7).[3] Second, Plaintiff asserts the ALJ cherry-picked the physical assessment proffered by Plaintiff's treating physician assistant, excluding a key limitation from the RFC and hypothetical posed to the vocational expert. (Id.). The Court will consider these arguments in turn.

## A. Residual Functional Capacity

Barbara asserts that the ALJ erred in determining her RFC because the ALJ ignored her testimony and the medical evidence supporting her assertions, and also mischaracterized the evidence cited in support of the RFC. (Dkt. 16 at 9-18). The Commissioner maintains the ALJ's RFC assessment is supported by substantial evidence. (Dkt. 17 at 6-11).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the

---

[3] The paginated numbers provided at the bottom of Plaintiff's Opening Brief do not correspond with the paginated numbers of the brief on the Docket. The Undersigned has decided to cite to the page numbers as they appear in the header of the document throughout this Order.

combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga*, 794 F.3d at 813.

### 1. *Physical Limitations*

Barbara first contends that the ALJ ignored her testimony and the medical evidence concerning her pain from fibromyalgia, erythromelalgia,[4] and polyarthritis, and failed to include standing and walking limitations supported by these impairments. (Dkt. 16 at 9-12). The Commissioner maintains that "by discussing normal physical exam findings from 2020, the ALJ more than minimally explained the evidentiary basis for her finding that Plaintiff remained capable of performing the walking and standing activities associated with light work." (Dkt. 17 at 8). The Commissioner also contends that the evidence Plaintiff points to in her brief does not show reversible error; rather, it is an impermissible request by Plaintiff for this Court to reweigh the evidence. (Id. at 7-8). In reply, Barbara argues that while an ALJ need not discuss every piece of evidence, the ALJ must provide a

---

[4] Erythromelalgia is a rare condition characterized by episodes of burning pain, warmth, swelling, and redness in part of the body, particularly the hands and feet. *Erythromelalgia*, NAT'L INST. HEALTH, https://rarediseases.info.nih.gov/diseases/6377/erythromelalgia (last visited Sept. 9, 2022).

logical bridge between the evidence and her conclusions, and the ALJ has failed to do so in this case. (Dkt. 18 at 3).[5]

At Step Two of the five-step sequential evaluation process, the ALJ found that Barbara had non-severe impairments of fibromyalgia, erythromelalgia, and polyarthritis. (Dkt. 14-2 at 27, R. 26). The ALJ then states, "I considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity." (Id.). While the ALJ does not specifically mention Plaintiff's fibromyalgia, erythromelalgia, and polyarthritis in the portion for the decision devoted to the RFC, a review of the RFC assessment demonstrates that the ALJ minimally articulated her reasoning surrounding the standing and walking limitations.

In particular, the ALJ noted Barbara's May 13, 2020 appointment with Physician Assistant Andrew Mathis in which the claimant's physical examination showed normal gait, normal range of motion and 5/5 strength in the lower extremities, and no obvious deformities in Barbara's bilateral knees. (Dkt. 14-7 at 519-21, R. 953-55). The ALJ also acknowledged Barbara's September 3, 2020 appointment with Mr. Mathis—post-dating her fibromyalgia, erythromelalgia, and arthritis diagnoses[6]—that demonstrated normal range of motion and full strength

---

[5] The Commissioner also argues that the Plaintiff has not expressly challenged the ALJ's step two finding and, thus, has waived this issue. (Dkt. 17 at 7). Barbara disagrees with the Commissioner's characterization of Plaintiff's argument but asserts that "what matters is the limitations connected to the impairment, not whether the impairment is severe or non-severe." (Dkt. 18 at 2). Accordingly, the Court need not address whether the ALJ erred at Step Two of the sequential process.
[6] Barbara was diagnosed with erythromelalgia in April 2019. (Dkt. 14-7 at 295, 297, R. 729, 731). She was diagnosed with fibromyalgia and polyarthritis in June 2020. (Id. at 465, 534, 537, R. 899, 968, 971).

in her lower extremities, as well as a normal gait. (Dkt. 14-7 at 525-32, R. 959-66). The ALJ also considered, and found persuasive, the opinion of Mr. Mathis, who opined that Barbara could sit and stand/walk eight hours in an 8-hour day and could frequently lift and carry 10 pounds or less. (Dkt. 14-7 at 61, R. 495). The ALJ relied on Barbara's treating provider in determining the claimant has the capacity to perform light work.[7]

Barbara points to numerous pieces of evidence regarding Plaintiff's fibromyalgia, erythromelalgia, and arthritis that she argues the ALJ failed to consider when determining an appropriate RFC. First, Barbara directs the Court to her April 19, 2019 diagnosis of erythromelalgia following complaints of leg pain, burning, and swelling. (Dkt. 14-7 at 180-87, 407-12, R. 614-21, 841-46). Next, Plaintiff references her continued complaints of pain and swelling in her legs and feet in June and September of 2019. (Dkt. 14-7 at 430-33, 474-77, R. 864-67, 908-11). Barbara also notes the results of a December 2019 venous duplex examination of her bilateral lower extremities finding "[a]ll vessels compress, showing phasic changes, demonstrate color flow, augment, and appear patent," and that compression of the right and left greater saphenous vein is complete. (Dkt. 14-7 at 201, R. 635). Next, Barbara highlights her continued complaints of leg and feet pain in May and June of 2020; diagnoses of polyarthritis and fibromyalgia; and positive

---

[7] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job in this category requires much walking or standing (off and on, for a total of approximately six hours of an eight-hour workday), and, if sitting, it involves some pushing and pulling of the arms or legs." *Diaz v. Charter*, 55 F.3d 300, 306 (7th Cir. 1995) (citing 20 C.F.R §§ 404.1567(b), 416.967(b); *Herron v. Shalala*, 19 F.3d 329, 332 n.7 (7th Cir. 1994)).

ANA test[8] and diffuse tender points in the upper and lower extremities, neck, and back on July 2020 physical examination. (Dkt. 14-7 at 458, 465, 551-52, R. 892, 899, 985-86). Lastly, Barbara maintains that the ALJ failed to consider her August 2020 appointment that documented reports of widespread musculoskeletal pain secondary to fibromyalgia and joint pain in Plaintiff's bilateral hands, shoulders, elbows, wrists, and knees; musculoskeletal tenderness on physical examination; and completion of a prednisone trial that provided minimal improvement of joint pain. (Dkt. 14-7 at 545-46, R. 979-80).

None of the medical evidence Barbara identifies, however, support the need for functional limitations related to Plaintiff's fibromyalgia, erythromelalgia, and arthritis. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (claimant bears the burden of showing that she has impairments that affect her ability to work and pointing to various diagnoses and complaints is insufficient to establish the existence of a functional limitation). Nor has Plaintiff pointed to any medical opinion indicating that the claimant would have standing or walking limitations due to her fibromyalgia, erythromelalgia, and arthritis greater than that found by the ALJ.

Barbara also appears to contend that her need for additional limitations related to fibromyalgia, erythromelalgia, and arthritis is supported by her hearing testimony. (Dkt. 16 at 9-11). During Barbara's October 27, 2020 disability hearing,

---

[8] ANA (Antinuclear Antibody) Test looks for antinuclear antibodies in an individual's blood, and may be used to help diagnose autoimmune disorders, such as lupus and rheumatoid arthritis. *ANA (Antinuclear Antibody) Test*, MEDLINEPLUS, https://medlineplus.gov/lab-tests/ana-antinuclear-antibody-test/ (last visited Sept. 7, 2022).

she testified that her arthritis and fibromyalgia cause her to have swelling in her legs and knees. (Dkt. 14-2 at 60, R. 59). Barbara stated that she cannot stand on her feet or walk too long because that causes her feet and legs to swell and turn "real red." (Id. at 58, R. 57). Barbara asserted that her physicians prescribed Cymbalta and compression socks to treat her swelling. (Id.). Barbara also testified that she can stand for about 20 minutes and walk approximately one block before her feet start to swell, burn, and hurt. (Id. at 58-59, R. 57-58). The ALJ, however, found Barbara's subjective symptom allegations not entirely consistent with the medical and other evidence in the record,[9] and Barbara has not challenged this finding.

The Court finds the Plaintiff has failed to establish that the ALJ ignored evidence concerning her pain from fibromyalgia, erythromelalgia, or polyarthritis. In addition, Barbara has failed to demonstrate that she was in need of additional standing or walking limitations. Though Barbara has been diagnosed with fibromyalgia, erythromelalgia, and polyarthritis, she has failed to identify any medical records or physician opinion supporting greater limitations than those imposed by the ALJ. Because substantial evidence supports the standing and walking limitation in the RFC, the Court will not remand on this issue.

Barbara also contends the ALJ erred in finding Barbara capable of frequently operating hand controls, handling, and fingering. (Dkt. 16 at 14). The Commissioner

---

[9] After considering Barbara's testimony, the medical evidence, and medical opinions, the ALJ found that Barbara's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Dkt. 13-2 at 30-31, R. 29-30).

again asserts that substantial evidence supports the ALJ's assessment. (Dkt. 17 at 9-10).

As part of the RFC assessment, the ALJ spent a significant amount of time considering the evidence related to Barbara's left-hand limitations. Specifically, the ALJ noted:

> The claimant underwent left thumb and wrist excision of the trapezium and transfer of the "FCR" tendon to the first metacarpal base with carpal tunnel release with subsequent therapy (Ex. 3F at 36). Findings in April 2016 showed normal findings regarding the left hand and wrist with normal gross and fine manipulations (Id. at 37). Thereafter, the claimant had left first dorsal compartment release of the left thumb and multiple procedures on her left hand and thumb in February 2017 (left thumb carpal metacarpal joint reconstruction, adduction contracture release left thumb) (Ex. 1F at 9, 10). On follow up in May 2017, Dr. McGuirk noted the claimant had minimal to mild pain and was doing "very well", wearing a splint on occasion while working. Objective testing showed good alignment (Id. at 7, 10). Dr. McGuirk documented the claimant did not have specific restrictions (Ex. 1F at 11).
>
> During her examination with [Physician Assistant] A. Mathis in September 2018, the claimant noted having intermittent difficulty with gripping and grasping, but denied dropping items. Physical examination findings showed decreased grip strength bilaterally, and decreased strength in her left upper extremity, tough [*sic*] the examiner noted "questionable effort" on the claimant's part. Her bicep/tricep flexion strength was also decreased. Of note, the record indicated this exam occurred when the claimant presented for "paperwork for disability" (Ex. 7F at 12-15; 4F at 6). In addition, the findings in September are inconsistent with the findings from July 2018, demonstrating intact strength in her upper extremities bilaterally and wholly unremarkable findings (Ex. 4F at 15). Findings in January 2019 also demonstrated intact bilateral upper extremity strength (Ex. 7F at 6, 9).
>
> The claimant slipped and fell in December 2019, noting injury to her left hand. Objective testing showed soft tissue swelling at the radial aspect of the wrist, but was otherwise unremarkable. She had decreased range of motion with intact sensation. She was diagnosed with sprain/contusion of the left wrist or fracture (Ex. 11F at 20, 21). With reports of ongoing pain, the claimant was examined in February 2020.

> She noted that she had "some difficulty" performing activities with her left hand due to numbness and sensitivity. Dr. McGuirk noted the claimant had mild hypersensitivity along the dorsal thumb with dullness along the dorsal radial hand. He assessed the claimant with neuropathic pain in the left hand and thumb and noted the claimant should discontinue her splint and was able to use her left hand without any specific restrictions (Ex. 12F at 8, 9). Additional findings in February 2020 showed normal strength in her upper and lower extremities, as well as intact grip strength (Ex. 16F at 49).

(Dkt. 14-2 at 30-31, R. 29-30).

Barbara asserts the ALJ mischaracterized Mr. Mathis' September 2018 examination. (Dkt. 16 at 15-16). As noted above, the ALJ described the September 17, 2018 appointment as showing "decreased grip strength bilaterally, and decreased strength in her left upper extremity, tough [*sic*] the examiner noted 'questionable effort' on the claimant's part. Her bicep/tricep flexion strength was also decreased." (Dkt. 14-2 at 30, R. 29). Barbara argues that the "questionable effort" comment by Mr. Mathis referenced pronation/supination[10] strength, and not her grip strength or bicep/tricep flexion strength. Barbara seems to suggest that if the ALJ had properly considered Mr. Mathis' findings regarding effort, she would have been limited to "occasional" handling and fingering and, thus not able to perform her past work. (Dkt. 16 at 16). Even finding the ALJ erred in attributing Mr. Mathis' finding of "questionable effort" to Barbara's grip strength or left upper extremity strength, this error would be harmless. Mr. Mathis reported that

---

[10] Supination and pronation are terms used to describe the up or down orientation of an individual's hand, arm, or foot. "When your palm or forearm faces up, it's supinated. When your palm or forearm faces down, it's pronated." Marjorie Hecht, *What's the Difference Between Supination and Pronation?*, HEALTHLINE (Nov. 26, 2019), https://www.healthline.com/health/bone-health/whats-the-difference-between-supination-and-pronation#:~:text=Both%20terms%20involve%20your%20gait,the%20inside%20of%20your%20foot..

Barbara's upper extremities were within a "normal ROM" and "strength 5/5 in all muscle groups." (Dkt. 14-7 at 144, R. 578). As the Plaintiff explained, the treatment plan following this September appointment was for Barbara to continue wearing her wrist splint. (Dkt. 16 at 16).

Barbara also argues that the ALJ cherry-picked portions of a December 2019 X-ray[11], failing to acknowledge evidence that "undermines the positive medical notes regarding Barbara's earlier surgeries." (Dkt. 16 at 15). In December 2019, Barbara injured her left hand after falling on ice. (Dkt. 14-7 at 222, R. 656). On December 21, 2019, an x-ray of Barbara's wrist and hand was performed, which found

> No acute fracture or dislocation. Chronically absent left trapezium with widening of the joint space between the scaphoid and the first metacarpal. Orthopedic plate along the ulnar aspect of the proximal diametaphyseal junction of proximal metaphyseal junction of left second metacarpal and presumably an orthopedic plate in the proximal left first metacarpal with arthritic changes in the proximal left first metacarpal. Soft tissue swelling at the radial aspect of the wrist. Remaining osseous and soft tissue structures are unremarkable.

(Id. at 222-23, R. 656-57). The physician's impression was "no acute osseous abnormality. Soft tissue swelling at the radial aspect of the wrist," and "see above report regarding postsurgical changes involving the radial aspect of the wrist and proximal first and second metacarpals." (Id.). In referencing this record, the ALJ noted "[o]bjective testing showed soft tissue swelling at the radial aspect of the wrist, but was otherwise unremarkable." (Dkt. 14-2 at 31, R. 30).

---

[11] Barbara refers to this as the 2020 x-ray. (*See* Dkt. 16 at 15; Dkt. 18 at 3). However, the record indicates that this x-ray occurred in December 2019. (*See* Dkt. 14-7 at 222, R. 656).

While the ALJ failed to specifically mention the postsurgical changes referenced in Barbara's December 2019 x-ray, an ALJ does not have to cite to every piece of evidence as long as she builds a logical bridge from the evidence to her conclusion. *Denton*, 596 F.3d at 425; *Craft*, 539 F.3d at 673. The record indicates that Plaintiff's treating provider, whom the ALJ found persuasive, subsequently reviewed the x-ray and found Plaintiff not limited. On February 11, 2020, following the x-ray, Dr. McGuirk saw Barbara for ongoing pain in her left thumb after falling in December 2019. (Dkt. 14-7 at 233-34, R. 667-68). Dr. McGuirk noted that Barbara had gone to Union Hospital emergency room, had x-rays taken, and had been advised to wear a splint. (Id.). On physical examination, Dr. McGuirk observed that there was mild hypersensitivity along the dorsal thumb, dullness along the dorsal radial hand, normal sensation distally, no tenderness to palpation about the wrist, no swelling about the wrist or thumb, and mild thickening along the volar radial thumb base scar with mild local tenderness to palpation. (Id.). Dr. McGuirk opined that Barbara should discontinue her splint and could use her left hand without any specific restrictions as tolerated. (Id.).

A little more than two weeks later, on February 28, 2020, Mr. Mathis saw Barbara and noted the Plaintiff has normal range of motion and strength in the upper extremities and normal grip strength bilaterally. (Dkt. 14-7 at 513-15, R. 947-49). In assessing the claimant's functional limitations, Dr. Mathis opined that Barbara could handle and finger 80% of an 8-hour workday. (Dkt. 14-7 at 61, R. 495). The ALJ found this opinion persuasive. Relying on medical records

demonstrating normal findings, normal gross and fine manipulations, treating providers' opinions, and the lack of specific restrictions, the ALJ's determination that Barbara is capable of frequently operating hand controls, handling and fingering is supported by substantial evidence. (Dkt. 14-2 at 30-31, R. 29-30). Thus, remand is not warranted.

### 2. *Mental Limitations*

Next, Barbara contends that the RFC fails to accommodate her mental limitations. (Dkt. 16 at 16-18). In response, the Commissioner asserts that Plaintiff's argument fails because Barbara failed to identify any mental limitations. (Dkt. 17 at 10).

The Regulations and Seventh Circuit caselaw makes clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record, even if those limitations do not individually rise to the level of a severe impairment, and the limitations imposed by the impairments are minor. *See DeCamp v. Berryhill*, 916 F.3d 671, 675-76 (7th Cir. 2019);  *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857-59 (7th Cir. 2014); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (an ALJ must fully consider a claimant's mental impairments when assessing the RFC, even if those impairments are non-severe); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010). *See also* SSR 96-8p; 20 C.F.R. §§ 404.1545(a), 416.945(a).

As noted above, at Step Two, the ALJ found Barbara's medically determinable mental impairment of anxiety did not cause more than a minimal

limitation in Barbara's ability to perform basic mental work activities and was therefore non-severe. (Dkt. 14-2 at 27, R. 26). During the "paragraph B" criteria analysis at Steps Two and Three, however, the ALJ found Barbara's mental impairment did cause the claimant to have mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Id. at 27-28, R. 26-27). The ALJ noted that "[b]ecause the claimant's medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are non-severe." (Id. at 28, R. 27) (citing 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1)). The ALJ then acknowledged that the limitations identified in the "paragraph B" criteria at Step Two did not constitute a RFC assessment, and that such a mental RFC assessment used at Steps Four and Five "requires a more detailed assessment." (Id.). The ALJ concluded that the subsequent RFC assessment would "reflect[ ] the degree of limitation [the ALJ] found in the 'paragraph B' mental function analysis." (Id.).

During the subsequent mental RFC assessment, the ALJ only noted that "the opinions from the psychiatric consultants are persuasive, as they remain supported by the evidence and are consistent with the claimant's capabilities and mental functioning limitations."[12]  (Dkt. 14-2 at 31, R. 30). The ALJ failed, however, to offer

---

[12] The regulations for both Step Two and the RFC assessment require an ALJ to determine functional limitations. *Compare* 20 C.F.R. § 404.1520a (requiring an ALJ to "rate the degree of

any analysis connecting any functional mental limitations found at Step Two and the RFC. *See Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011) ("It is unclear what the ALJ meant by saying that the RFC 'reflects' his Step 2 findings concerning Ms. Muzzarelli's mental limitations. He could have intended this to mean that the RFC was designed to incorporate the mild impairments identified at Step 2, even though they were not specifically mentioned in the RFC. He could also have meant that he considered the Step 2 limitations as part of the RFC analysis but found them to be too mild to warrant additional non-exertional restrictions."); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) ("Or perhaps the language at issue is mere boilerplate that the ALJ uses to conclude any Step Two evaluation addressing a claimant's mental impairments or limitations. Without more of an explanation as to how Ms. D.'s mental limitations factor into her RFC (if at all), we cannot 'trace the ALJ's path of reasoning.'").

Relying on *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), the Commissioner seems to argue that this error is harmless because Barbara failed to identify any mental limitations caused by her impairments. (Dkt. 17 at 10). The facts of *Jozefyk* are distinguishable from this case. In *Jozefyk*, the ALJ offered specific reasons why the claimant's mild mental limitations only required limited functional limitations in the RFC, and the Seventh Circuit found this explanation

---

functional limitation" resulting from an impairment at step two), *with* 20 C.F.R. § 404.1545(c) (requiring an ALJ to "assess the nature and extent of your mental limitations and restrictions" to determine residual functional capacity).

adequate. *Id.* In this case, however, the ALJ concluded that Barbara had mild limitations in the "paragraph B" criteria areas, included no non-exertional limitations in the RFC that would address these limitations, and provided no explanation as to why no limitations were included in the RFC. (Dkt. 14-2 at 27-32, R. 26-31).

"While a mild … limitation in an area of mental functioning does not necessarily prevent an individual from securing gainful employment, the ALJ must still affirmatively evaluate the effect such mild limitations have on the claimant's RFC." *Simon-Leveque v.* Colvin, 229 F. Supp. 3d 778, 787 ( N.D. Ill. 2017) (remanding when ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations). Courts have consistently found that an ALJ errs by failing to account for mild mental limitations resulting from a claimant's mental impairment when assessing the individual's mental RFC. *See Kelli M. v. Saul*, No. 1:20-cv-1731-DLP-JRS, 2021 WL 4236802, at *5-6 (S.D. Ind. Sept. 17, 2021) (remanding where ALJ failed to explain why mild limitations in mental functioning did not require RFC limitations); *Julie J. v. Kijakazi*, No. 1:20-cv-1597-SEB-DLP, 2021 WL 4437587, at *2 (S.D. Ind. Sept. 28, 2021) (If, after consideration, the ALJ determines that a non-severe mental impairment "[does] not merit a non-exertional limitation in the RFC, he [is] obligated to explain that conclusion so that [the Court] can follow the basis of his reasoning."); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *4 (N.D. Ill. Apr. 8, 2022) ("[E]ven if the ALJ's RFC determinations were to remain unchanged after an evaluation of the functional limitations, an ALJ

is still required to articulate whether her mild functional limitations findings in the B criteria categories are consistent with her RFC analysis.").

In this case, the ALJ concluded that Barbara has mild mental functional limitations in all four "paragraph B" criteria areas, but failed to consider how these limitations would affect Barbara's ability to sustain full-time work. This was error. *Barbara B. v. Kijakazi*, No. 20 CV 547, 2021 WL 5937766, at *3 (N.D. Ill. Dec. 16, 2021) (finding error and remanding where "the ALJ found that Barbara suffer[ed] from mild CPP limitations, acknowledged that the RFC used at steps four and five would require 'a more detailed assessment' ... [but] never delivered on these promises, however, and instead formulated an RFC that lack[ed] any mental health restrictions and failed to explain why limitations were not warranted.").

Recognizing that the ALJ was only required to *consider* Barbara's mild mental limitations, and not necessarily include them in the RFC, *Rick M. v. Saul*, No. 20-cv-4369, 2021 WL 2588762, at *5 (N.D. Ill. June 24, 2021), the Court is unable to reach this determination because the ALJ failed to discuss the evidence, evaluate Barbara's mental health history, or offer any explanation for why Plaintiff's record did not support incorporating any mental limitations in the RFC. Even if the ALJ had reviewed Barbara's records and concluded that no functional limitations were warranted, the ALJ was still required to explain how she arrived at that conclusion. *See Stuart W. v. Saul*, No. 1:20-cv-402-DLP-JRS, 2021 WL 1662630, at *6 (S.D. Ind. Apr. 28, 2021) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (ALJ is not required to mention every piece of evidence but must

provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled, in order to promote meaningful judicial review). The ALJ's mere mention of Barbara's anxiety and the conclusion that "the opinions from the psychiatric consultants are persuasive" is insufficient.

Because the Court is unable to trace the ALJ's reasoning to determine whether the ALJ has provided a logical bridge from the evidence to her conclusion, remand is required. On remand, the ALJ must either incorporate into the RFC non-exertional limitations that account for Barbara's mild mental limitations in the "paragraph B" criteria or explain why such limitations are unnecessary.

### B. Opinion Evidence

Lastly, Barbara contends that the ALJ erred by not incorporating into the RFC and hypothetical to the vocational expert Mr. Mathis' opinion that Barbara "need[s] to take unscheduled breaks once every two hours." (Dkt. 16 at 18). Because the Court has already concluded that the ALJ's RFC analysis is lacking on other grounds, the Court need not resolve other issues raised by Barbara regarding the RFC. The ALJ should take the opportunity, however, on remand to reconsider whether unscheduled breaks should be included in the RFC determination.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/15/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email